O

# United States District Court
# Central District of California

| | |
|---|---|
| SHAMEA OGIAMIEN, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>NORDSTROM, INC.,<br><br>    Defendant. | Case No. 2:13-CV-05639-ODW- JCG<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION [36]** |

## I.   INTRODUCTION

Plaintiff Shamea Ogiamien seeks to certify a class of former, non-exempt employees of Defendant Nordstrom, Inc. ("Nordstrom"), alleging that Nordstrom's policy subjected them to bag checks during "off the clock time" without compensation.  (ECF No. 36.)  Nordstrom opposes the certification arguing that individualized inquiries into the random and non-mandatory checks of bag-carrying employees prevents class-wide issues from predominating over individual issues. (ECF No. 48.)  For the reasons discussed below, the Court **DENIES** Ogiamien's Motion for Class Certification.[1]

///

---

[1] After carefully considering the papers filed in support of and in opposition to the Motion, the Court deems the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; L.R. 7-15.

## II.    FACTUAL BACKGROUND

Nordstrom owns and operates retail clothing stores throughout California. (Compl. ¶ 7.)[2]  Ogiamien is a former non-exempt employee.  (*Id.* ¶ 6.)  Ogiamien alleges that, as part of its loss prevention program, Nordstrom requires employees to go through bag checks at the beginning and end of their rest breaks.  (Compl. ¶ 14.) Ogiamien alleges that Nordstrom failed to pay her and other non-exempt employees for the time of conducting the bag check and for waiting in line to conduct the bag check.  (*Id.* ¶ 15.)  Such failure allegedly violates California law.  (*See id.* ¶ 16.)

While Ogiamien's Complaint raises six state-law causes of action, her Motion for Class Certification is narrow:  "[Ogiamien] seeks to certify a class of [Nordstrom's] non-exempt employees based on the theory of liability that [Nordstrom] had a practice of requiring class members to undergo security searches (called 'package checks' or 'bag checks') while off-the-clock."[3]  (ECF No. 36 ["Cert. Mot."] at 1.)  The Nordstrom policy in question states: "Any purchases [an employee] make[s] during [his or her] shift – as well as [that employee's] handbag, briefcase or other bags – need to be checked at the Employee Service Area (ESA) or Self Service Area (SSA)."  (ECF No. 36-3.)  This alleged unlawful policy is the sole basis for this Motion.  Ogiamien seeks to certify the following class:

> All persons who are employed or have been employed by
> Defendant in the State of California and who, at any time
> during the four years prior to the filing of this class action to
> the trial of this matter, have worked as non-exempt
> employees at Defendant's retail locations, excluding those
> who worked as commissioned salespersons at Defendant's
> full-line stores for the time periods during which they held

---

[2] As a result of revolving lead plaintiffs, the live pleading in this case is the Third Amended Complaint (hereinafter "Compl.").  (ECF No. 25.)

[3] Ogiamien asserts that this Motion applies to only Counts 3–6 of her Complaint, excluding Counts 1 and 2 involving meal and rest breaks.  (Cert. Mot. at 10, n.12.)

that position, and excluding those who signed Nordstrom's Dispute Resolution Agreement as amended in or after June 2011 to contain a class action waiver (the "Class").

(Cert. Mot. at 9.)  This Motion is now before the Court for decision.

### III.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 23(a), a party seeking class certification must initially meet four requirements:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

The plaintiff bears the burden of demonstrating that the putative class satisfies each of Rule 23(a)'s elements along with one component of Rule 23(b).  *Conn. Ret. Plans & Trust Funds v. Amgen Inc.*, 660 F.3d 1170, 1175 (9th Cir. 2011); *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2548 (2011).  A putative damages class under Rule 23(b)(3) states that a class may be maintained where "questions of law or fact common to class members predominate over any questions affecting only individual members," and a class action would be "superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  "This analysis presumes that the existence of common issues of fact or law have been established pursuant to Rule 23(a)(2)" and focuses on "the relationship between the common and individual issues."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998).

/ / /

"Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Dukes*, 131 S. Ct. at 2551. A district court must perform a "rigorous analysis" to ensure that the plaintiff has satisfied each of Rule 23's requirements. *Id.*; *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 980 (9th Cir. 2011). In many cases, "that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." *Dukes*, 131 S. Ct. at 2551 (quoting *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 160 (1982)). When resolving such factual disputes in the context of a motion for class certification, district courts must consider "the persuasiveness of the evidence presented." *Ellis*, 657 F.3d at 982 (holding that a district court must judge the persuasiveness and not merely the admissibility of evidence bearing on class certification). Ultimately the decision to certify a class reposes within the district court's discretion. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).

## IV.    EVIDENTIARY OBJECTIONS

Defendant asserts numerous objections to Plaintiff's proffered declarations, and seeks to strike such evidence. (*See* ECF No. 47.) The Court is unpersuaded. While it would have been preferable for all declarants to sit for deposition, Defendant had other avenues of enforcement, which it failed to seek. Had such testimony been crucial, Defendant should have sought court-aid in obtaining it. The Court will not allow a Defendant to bide his time until a class certification motion is pending and then move to strike all of Plaintiff's supporting evidence when Defendant has failed to be proactive in obtaining other available relief.

Additionally, Defendant's objections are largely improper at this stage in the proceedings where the Court is free to consider otherwise inadmissible evidence at this stage. *See Vedachalam v. Tata Consultancy Servs. Ltd.*, No. C 06-0963 CW 2012 WL 1110004, at *4 (N.D. Cal. April 2, 2012) (quoting *Keiholtz v. Lennox Hearth*

*Prods., Inc.*, 268 F.R.D. 330, 337 n.3 (N.D. Cal. 2010) ("'On a motion for class certification, the [c]ourt makes no findings of fact and announces no ultimate conclusions on Plaintiffs' claims' and therefore 'the [c]ourt may consider evidence that may not be admissible at trial.'").   Moreover, Defendant's arguments regarding allegedly conflicting information are inappropriate grounds to strike the declaration testimony, impacting only the weight given to the evidence.   Finally, that some declarants are not putative class members has *no bearing whatsoever* on their declarations' admissibility.   For all these reasons, Defendant's request to strike the proffered declaration testimony fails.   Accordingly, the Court considers the full record before it in reaching its decision to not certify the proposed class.

## V.   DISCUSSION

Ogiamien filed her Motion for Class Certification on September 22, 2014.  (*See* Cert. Mot.)  Nordstrom filed its Opposition Brief on November 17, 2014 (ECF No. 48 ["Opp. Br."]), and Ogiamien filed her Reply on December 22, 2014 (ECF No. 102 ["Reply"]).  Nordstrom raises one principle challenge to the Motion—Ogiamien failed to establish predominance under Rule 23(b)(3).[4]   The Court agrees because the individual issues of liability are overwhelming.

**A.    Rule 23(a) Requirements**

Ogiamien's Motion for Class Certification first addresses the four elements of Rule 23(a).  (Cert. Mot. at 13–17.)  Nordstrom does not dispute the adequacy of the Rule 23(a) elements, but instead only challenges the adequacy of Rule 23(b)(3).  (*See* Opp. Br.)  Therefore, the Court accepts Nordstrom's concession that the Rule 23(a) requirements are satisfied and will proceed directly to the impetus of this Motion— predominance under Rule 23(b)(3).

/ / /

/ / /

---

[4] Because the Court finds that class certification, as requested, is not appropriate, resolving Nordstrom's claims regarding the statute of limitations for Count 6 of the Complaint is not necessary.

**B.     Rule 23(b)(3) Requirements**

Ogiamien proposes a damages class under Rule 23(b)(3) for her bag check claims, which requires her to establish:  (1) predominance—that common questions predominate over individual ones, and (2) superiority—that a class action is the superior method of adjudicating this dispute.  *See* Fed. R. Civ. P. 23(b)(3).  The controlling issue in this case is whether the common questions regarding Nordstrom's bag check policy and lost wages predominate over individual questions of liability, such as how many employees did not carry bags or were not checked.

*1.     Individualized Liability Inquiries*

As recently explained by a court in the Northern District of California, in the employer inspection context "courts are comfortable with individualized inquires as to damages, but are decidedly less willing to certify classes where individualized inquiries are necessary to determine liability."  *Kurihara v. Best Buy Co.*, No. 06-1884-MHP, 2007 WL 2501698, at *9 (N.D. Cal. Aug. 30, 2007); *see also Holak v. Kmart Corp.*, No. 12-0304-AWI, 2014 WL 2565902, at *24 (E.D. Cal. June 6, 2014) ("While individualized inquiries with regard to damages will not defeat certification, the issue of whether there is common liability to class members is directly relevant to the commonality inquiry.")

This case undisputedly involves individual inquiries regarding liability. Ogiamien concedes that employees without bags are not subject to Nordstrom's policy, and the record is replete with such evidence.  (Duerst Decl. ¶ 4; Richardson Decl. ¶ 4; Witherspoon Decl. ¶ 4; Martinez Decl. ¶ 3; Hughes Decl ¶ 2; Engstrom Decl. ¶ 6; Gonzelez Decl. ¶ 5.)  Ogiamien acknowledged at her deposition that she could have avoided the inspections if she chose not to bring her bag.  (Ogiamien Depo. 96:17–98:14.)  Nordstrom even provided an expert report from Dr. Jeffrey Fernandez, who analyzed more than 1,700 employees departing twelve different stores and found that more than a quarter of employees he observed left the store without any bags.  (Fernandez Rept. at 6.)  If an employee did not carry a bag to work,

Nordstrom's bag-check policy cannot create *any* liability for Nordstrom with respect to that employee—there are simply no lost wages. The requirement of a bag-toting employee distinguishes this case from the precedent cited in Ogiamien's Motion. In each of her cited cases, *all employees*, regardless of what they were carrying, were required to participate in some work-mandated activity before or after work. *See Integrity Staffing Solutions v. Busk*, 135 S. Ct. 513 (2014) (warehouse employees required to undergo security screening before leaving work); *Wren v. RGIS Inventory Specialists*, 256 F.R.D. 180, 205 (N.D. Cal. 2009) (all employees required to participate in donning and waiting-time period before work). With a large percentage of employees not even subject to Nordstrom's policy, the Court is concerned with the level of individualized liability inquires.

### 2.    *Specific, Company-Wide Policy*

The court in *Kurihara* further explained that "courts' discomfort with individualized liability issues is assuaged in large part where the plaintiff points to a specific company-wide policy or practice that allegedly gives rise to consistent liability." *Kurihara*, 2007 WL 2501698, at *10. In *Kurihara*, the "plaintiff provided substantial evidence of the existence of a company-wide policy whereby employees are subject to inspections, and not compensated for the time spent in those inspections." *Id.*

The individualized liability issues discussed *supra* are not "assuaged" because Ogiamien cannot identify a "specific company-wide policy or practice that allegedly gives rise to consistent liability." *Id.* Based on the evidence submitted by the parties, it is not readily apparent that Nordstrom has a facially invalid "uniform policy consistently applied to a group of employees." *See Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1033 (2012). It is undisputed that Nordstrom has a bag check policy, yet the parties disagree on the scope. The plain language of the policy only states that bags "need to be checked," and makes no mention of frequency. While Ogiamien claims that the bag checks "are absolutely mandatory" (Cert. Mot. at

3), the relevant question is not whether a bag check is mandatory once commenced, but whether the store mandates that all employees are checked before they leave the workplace.  Nordstrom's evidence overwhelmingly indicates that the policy does not mandate checks each time an employee leaves the store and bag checks were conducted randomly.  (Taylor Depo. 72:2–23; Gonzalez Decl. ¶ 9; DeGrazier Decl. ¶ 8; McGrath Decl. ¶ 7; Parks Decl. ¶ 3; Hislar Decl. ¶ 3.)  Nordstrom's training manual indicates that managers were instructed to conduct bag checks randomly. (Taylor Depo. 55:11–20; Parks Decl. ¶ 3; Huston Decl. ¶ 6; Gonzalez Decl. ¶ 9.) Nordstrom also presented a highly persuasive expert report that concluded that *most* employees with bags left Nordstrom retail locations without any bag check. (Fernandez Rept. at 7.)  Ogiamien provided no rebuttal expert evidence.  The Court is authorized to consider "the persuasiveness of the evidence presented" when deciding class certification, *Ellis*, 657 F.3d at 982, and it is heavily swayed by Nordstrom's strong evidentiary support.

This is not a case of lapses in enforcement.  The *Kurihara* court explained that "[w]here a plaintiff challenges a well-established company policy, a defendant cannot cite poor management to defend against class certification."  *Kurihara*, 2007 WL 2501698, at *10.  Here, however, the actual language of Nordstrom's policy does not indicate that bag checks were a required ritual each time an employee leaves the store. At best, the language in the policy is ambiguous.  Nordstrom's unrebutted evidence strongly suggests that the policy was tailored for random checks in design and in practice.  Therefore, Ogiamien's claims of lapsed enforcement are rejected.

Ogiamien seeks to certify a class of every Nordstrom employee over a four-year period, yet the evidence in the record is quite clear—not every employee carried a bag and not every employee with a bag was checked.  Therefore, Ogiamien's proposed class inherently involves issues of individualized liability because Nordstrom *cannot* be liable to employees that were never subject to the alleged unlawful policy.  As Nordstrom accurately argues, individual inquiries are required to establish liability for

8

each putative class member such as: (1) which employees brought bags; (2) which employees who brought bags were subject to bag checks; (3) whether they left the store for breaks; and (4) if they left for breaks, if they did so with or without bags. (Opp. Br. at 12–13.)[5]

Ogiamien's predominance arguments are misplaced.  First, Ogiamien places too much emphasis on the common questions of law and fact in this case.  (Cert. Mot. at 1.)  Nordstrom concedes Rule 23(a) commonality, and the Court finds this was a smart decision—there is clearly a common question of whether Nordstrom's policy resulted in loss wages.  However, predominance under Rule 23(b)(3) digs deeper and compares the common issues to individual issues, such as individual liability.  *See Hanlon*, 150 F.3d at 1022.  Ogiamien fails to offer a solution for the large number of proposed class members where *no liability* exists.  Second, Ogiamien conflates the issue of damages and liability.  Ogiamien's Reply asserts that the "extent to which the employees were harmed by [Nordstrom's] policy—the focus of Nordstrom's observations—is an issue of damages that does not affect certification."  (Reply at 7.)  Ogiamien fails to recognize that some, if not a large percentage, of proposed class members were *never* harmed by the policy.  This is not a question of "extent" of liability, but of the *existence* of liability.

Judge Dean Pregerson recently denied class certification in a nearly identical case involving bag checks.  *See Quinlan v. Macy's Corp. Servs., Inc.*, No. 12-00737-DDP (C.D. Cal. Aug. 22, 2013) (order denying class certification).  In *Quinlan*, Judge Pregerson denied class certification in part because even though the defendant employer had a bag check policy that facially covered all employees, "the inspection protocols only applied to those employees who chose to travel with packages or baggage.  There is no indication what proportion of the 84,000 employees Plaintiff

---

[5] Nordstrom also raises arguments as to whether the amount of time at bag checks was legally *de minimis* and whether employees were on or off the clock during each bag check.  (Opp. Br. at 19–21.)  Because this Motion is resolved on the issue of individual liability, the Court does not need to reach these arguments.

9

1    seeks to represent made such a choice." *Id.* at 11.  Judge Pregerson further explained:
2    "The 84,000 purported members of the purported class share little in common beyond
3    their employment at Macy's.  While all class members were subject in name to the
4    same search policy, the very nature of that random inspection policy was such that it
5    varied from store to store and day to day." *Id.* at 10.

6         Ogiamien offers the Court no principled reason to depart from the reasoning in
7    *Quinlan*.  There is simply no question that (a) class certification would require a
8    significant amount of work just to determine individual liability and Ogiamien offers
9    no solution to this problem, and (b) Nordstrom does not have a specific company-
10   wide policy that would give rise to consistent liability.  These are the exact two issues
11   that prevented class certification in *Quinlan*.  Without a specific, unlawful policy to
12   establish consistent liability, the Court would have to identify which Nordstrom
13   employees took bags to work, identify the days the bags were carried, and determine
14   whether a random inspection was conducted on those days.  These individual
15   questions predominate over questions affecting the entire class.  Ogiamien's proposed
16   class of *every* employee over a four-year period is not "sufficiently cohesive to
17   warrant adjudication by representation." *Amchem*, 521 U.S. at 623.

18        The Court therefore concludes that Ogiamien failed to establish that "the
19   questions of law or fact common to class members predominate over any questions
20   affecting only individual members." Fed. R. Civ. P. 23(b)(3).  As such, the Court
21   does not need to reach the issue of superiority.

22   / / /
23   / / /
24   / / /
25   / / /
26   / / /
27   / / /
28   / / /

# VI.    CONCLUSION

For the reasons discussed above, the Court **DENIES** Ogiamien's Motion for Class Certification.  (ECF No. 36.)

**IT IS SO ORDERED.**


February 24, 2015

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**